**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flsb.uscourts.gov

In Re:                                                          Chapter 11

ORLANDO MEDICAL INSTITUTE, INC.,              Case No. 24-06628-TPG


     Debtor

_____/

## AMENDED MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. §362(d) TO PERMIT ENTRY OF FINAL JUDGMENT OF GARNISHMENT
### (Amended to Remove Negative Notice Provision)

**COMES NOW**, the Movant, Heaven 3 RE, LLC (hereinafter referred to as "Heaven 3" or

"Movant"), by and through the undersigned attorney, and hereby files this Motion for Relief from

Stay Pursuant to 11 U.S.C. §362(d), and states as follows:

### FACTS AND PROCEDURAL HISTORY

1.      On or about March 8, 2024, the Movant obtained Final Summary Judgment against

the Debtor, ORLANDO MEDICAL INSTITUTE, INC. (hereinafter "Debtor") in the case styled,

Heaven 3 RE, LLC v. Felix Marquez and Orlando Medical Institute, Inc., Case No. 2022-CA-

007527-O in the Circuit Court in and for Orange County, Florida (hereinafter "State Court Case").

A copy of the Final Judgment is attached hereto as Exhibit "A".

2.       On or about March 25, 2024, a writ of garnishment was issued against Garnishee,

Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), in the State Court Case. The writ was served

on March 28, 2024.

3.      On or about April 3, 2024, Wells Fargo responded to the writ of garnishment with

its answer stating that it was indebted to the Debtor and Felix Marquez in the amount of $22,312.09

in four (4) accounts. Three (3) of the accounts were in the name of the Debtor with a total amount

of $22,182.17. The fourth account was held by Felix Marquez, and the garnishment was dissolved only as to this account.

4.        Thereafter, on April 24, 2024, a second writ of garnishment was issued against Garnishee, Wells Fargo. On or about April 25, 2024 the second writ of garnishment was served. On or about May 3, 2024, Wells Fargo responded to the second writ of garnishment with its answer stating that it was indebted to the Debtor in the amount of $2,379.55. This is in addition to the amounts associated with the previous writ of garnishment.

5.        On or about September 13, 2024, the Movant filed its Motion for Final Judgment of Writs of Garnishment Issued March 25, 2024 and April 24, 2024.

6.        On or about December 5, 2024, the parties appeared at hearing before the Honorable Eric J. Netcher in the State Court Case on Movant's Motion for Final Judgment of Writs of Garnishment Issued March 25, 2024 and April 24, 2024 as well as Debtor's Motion to Dissolve the First Writ of Possession. The Court ruled from the bench that Movant's Motion for Final Judgment was granted and a judgment was to be issued. The Court denied the Motion to Dissolve. The Court Ordered that counsel for the Movant should submit the final judgment in Word format for review and execution. This bankruptcy case had not been filed at the time of the hearing and the ruling of the State Court. A copy of the Court Minutes is attached hereto as Exhibit "B".

7.        Thereafter, the Debtor filed this bankruptcy case on or about December 5, 2024 at 2:51 p.m. A copy of the Notice of Bankruptcy Case Filing is attached hereto as Exhibit "C". In an abundance of caution, the Movant did not submit the final judgment of garnishment upon notice of the suggestion of bankruptcy. As such, the Movant now seeks relief from the automatic stay to proceed with the ministerial task of having the Final Judgment of Garnishment entered

in the State Court Case as was orally granted prior to the imposition of the automatic stay.

## ARGUMENT

### I.      The Court should grant relief from the automatic stay pursuant to 11 U.S.C. §362(c)(1)

The Court should grant relief from the automatic stay pursuant 11 U.S.C. §362(c)(1), which

states as follows:

> (3) the stay of an act against property of the estate under subsection (a) of
> this section continues until such property is no longer property of the estate

Upon the ruling of the Judge in the State Court Case granting the Movant's request for final judgment

of garnishment, the property held in accounts by Wells Fargo was no longer property of the estate.

Florida Statute §77.083 states as follows:

> Judgment against the garnishee on the garnishee's answer or after trial of a
> reply to the garnishee's answer shall be entered for the amount of his or her
> liability as disclosed by the answer or trial. Instead of scire facias, the court
> may subpoena the garnishee to inquire about his or her liability to or
> possession of property of the defendant. No judgment in excess of the
> amount remaining unpaid on the final judgment against the defendant or in
> excess of the amount of the liability of the garnishee to the defendant,
> whichever is less, shall be entered against the garnishee.

Fla. Stat. Ann. § 77.083. The Judge in the State Court Case has granted the Movant's rights to finalize

the garnishment of the amounts held by Wells Fargo under Florida law. The entry of that final

judgment creates an indebtedness between the garnishee, Wells Fargo, and the Movant for the funds

held in garnishment. As such, these funds are no longer property of the estate. The timing of the filing

of the bankruptcy does not alter the Circuit Court's ruling from prior to the filing of the bankruptcy.

The automatic stay has merely delayed rendition of the final judgment, which was granted prior to

the Debtor filing the bankruptcy petition and invoking the automatic stay. As such, stay relief should

be granted to permit the Movant to submit the final judgment of garnishment and move forward with

the remedies available to it to obtain the funds from the garnishee, Wells Fargo, pursuant to Florida

law.

### a.  **The payment of the garnished amounts to the Movant would not be a recoverable preference under 11 U.S.C. §547.**

Florida Statues §77.06(1) states as follows:

> Service of the writ shall make garnishee liable for all debts due by him or
> her to defendant and for any tangible or intangible personal property of
> defendant in the garnishee's possession or control at the time of the service
> of the writ or at any time between the service and the time of the garnishee's
> answer. Service of the writ creates a lien in or upon any such debts or
> property at the time of service or at the time such debts or property come
> into the garnishee's possession or control.

Fla. Stat. Ann. § 77.06. A lien upon property is created when a writ of garnishment is served upon

the garnishee, who has control and possession of the property.  In re Cooper, 153 B.R. 925, 926

(Bankr. M.D. Fla. 1993). A final judgment that is entered subsequent to the creation of the lien, in

favor of a creditor will relate back to the day on which the garnishment was served upon the

garnishee. Id. The crucial event in perfecting a garnishment lien is the date of service of the writ. In

re Harrington, 70 B.R. 301, 305 (Bankr. S.D. Fla. 1987). The dates of service of the writs of

garnishment in this matter are March 28, 2024 and April 25, 2024 respectively. Copies of the Returns

of Service are attached hereto as Exhibit "D". As such, the creation of the garnishment lien relates

back to the dates of service, which were 252 days and 224 days prior to the filing of the bankruptcy

respectively.

There is no legitimate argument that the Movant is an insider of the Debtor, and as such, the

applicable time period for avoidance of a preferential transfer under 11 U.S.C. §547(b)(4) would be

on or within ninety (90) days from the date of the filing the petitions. As notated above, the dates of

the service of the writs of garnishment extend well beyond the ninety (90) day preference period.

Additionally, the liens relating to a writ of garnishment are judicial liens as the liens came into

existence as a part and parcel of the process to collect on a judgment and, therefore, they do not owe their existence solely to a statute but to a judicial proceeding. *See* In re Engler, 394 B.R. 598, 605 (Bankr. M.D. Fla. 2008). As such, the Debtor cannot utilize the 11 U.S.C. §545 to avoid the liens as a statutory lien.

## **CONCLUSION**

Movant requests that the Court Order entered pursuant to the instant Motion provide relief from the automatic stay that permits the State Court to complete the ministerial task of entering the already granted Final Judgment of Garnishment and permit the Movant to enforce to finalize the garnishment proceedings.

WHEREFORE, Heaven 3 RE, LLC, requests this Honorable Court enter an Order confirming granting relief from the automatic stay, allowing Heaven 3 RE, LLC to proceed with obtaining the entry of the final judgment of garnishment in the case styled, Heaven 3 RE, LLC v. Felix Marquez and Orlando Medical Institute, Inc., Case No. 2022-CA-007527-O in the Circuit Court in and for Orange County, Florida, waiving the fourteen (14) day stay on the Order granting stay relief pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), and for any and all other relief this Court deems just and appropriate.

Dated: January 23, 2025.

Respectfully Submitted,

S:// Nicholas G. Rossoletti
Nicholas G. Rossoletti, Esquire
Florida Bar No. 0051466
BILU LAW, P.A.
2760 W ATLANTIC BLVD
POMPANO BEACH, FLORIDA  33069
Telephone: (954) 596-0669
Fax: (954) 427-1518
nrossoletti@bilulaw.com
Attorney for Heaven 3 RE, LLC

**PROOF OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been sent by either electronic transmission or U.S. Mail on January 23, 2025 to all parties listed on the attached Exhibit "E".

Respectfully Submitted,

S:// Nicholas G. Rossoletti
Nicholas G. Rossoletti, Esquire
Florida Bar No. 0051466
BILU LAW, P.A.
2760 W ATLANTIC BLVD
POMPANO BEACH, FLORIDA  33069
Telephone: (954) 596-0669
Fax: (954) 427-1518
nrossoletti@bilulaw.com
Attorney for Heaven 3 RE, LLC

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR ORANGE
COUNTY, FLORIDA

HEAVEN 3 RE, LLC,
as successor in interest to Heaven III, LLC,

   Plaintiff,        CASE NO.: 2022-CA-007527-O

v.

FELIX MARQUEZ, an individual, and
ORLANDO MEDICAL INSTITUTE, INC., a
Florida corporation,

   Defendants.

_____/

## FINAL SUMMARY JUDGMENT

   THIS MATTER is before the Court on the Motion for Summary Judgment filed by Plaintiff Heaven 3 Re, LLC ("Heaven") on October 6, 2023 (the "Motion"). The Court has reviewed the Motion, the Response and Memorandum of Law in Opposition to the Motion (the "Response") filed by Defendants, Felix Marquez ("Marquez") and Orlando Medical Institute, Inc. ("OMI", collectively with Marquez, the "Defendants") on December 19, 2023 (the "Response"), and the Record, and the Court has heard from the parties at the hearing on February 7, 2024, and is otherwise fully informed in the premises. For the reasons discussed below, the Court grants the Motion and enters final summary judgment as follows:

## BACKGROUND

   Plaintiff, Heaven, initiated this action on August 15, 2022 through a single-count complaint for breach of contract against Marquez, as the personal guarantor under a commercial lease agreement between Heaven and OMI (the "Lease") dated November 7, 2017. On August 29, 2022, Heaven filed an amended complaint, maintaining its claim against Marquez and adding a breach of contract claim against OMI (the "Amended Complaint"). The Amended Complaint seeks only monetary damages for amounts allegedly due under the Lease for rent, insurance, real estate taxes, common area maintenance, and late fees. *See* Am. Compl.

Heaven filed the Motion on October 6, 2023. Heaven attaches to its Motion a declaration from Lisa O' Connor (the "O'Connor Declaration"), the Chief Financial Officer/Controller of Realvest Equity Partners, LLC, doing business as NAI Realvest ("Realvest"), which managed the property that was the subject of the Lease on behalf of Heaven (the "Property"). *See* Motion at Ex. C. The O'Connor Declaration explains in detail OMI's payments made under the Lease and Realvest's application of late fees to such payments, and it attaches copies of sixteen (16) checks received from OMI. *See id.* Heaven also attaches to its Motion a declaration from Michael Kramer, the manager of Heaven 3 Sponsors, LLC, which is the manager of Plaintiff Heaven (the "Kramer Declaration"). *See* Motion at Ex. B. The Kramer Declaration attaches documents reflecting that Heaven is the assignee of the Lease, and that, as a part of Heaven's sale of the Property in August 2022, Heaven transferred OMI's security deposit to the purchaser. *See id.*

Defendants filed their Response on December 19, 2023. Along with their Response, Defendants submitted two affidavits, from Marquez and Director of Operations Vice President of OMI, Abigail Marquez. Both affidavits attach identical exhibits: a "ledger" of certain rent payments purportedly made between June 2021 and August 2022, a tenant estoppel certificate, the Notice, the First Amendment to the Lease, and emails between Abigail Marquez and Realvest.

For the reasons explained below, there is no genuine dispute as to any material fact, and Heaven is entitled to summary judgment in its favor on Counts I and II of the Amended Complaint.

## UNDISPUTED MATERIAL FACTS

1.      On November 7, 2017, OMI and Heaven III, LLC, predecessor in interest to Heaven, entered into a commercial lease agreement (the "Lease") for the lease of the premises located at 6925 Lake Ellenor Drive, Building 3, Orlando, Florida (the "Property"). *See* Am. Compl. at Ex. A; Motion at Ex. A, at ¶ 1.

2.      Section 20 of the Lease states that "it is mutually agreed that Landlord shall have the right and privilege, at any time during said term to sell or convey the said premises, and the building and real property of which the said premises are a part, without the consent of the Tenant…It is also mutually agreed that Landlord shall have the right at any and all times, without the necessity of obtaining the consent of Tenant, to assign this Lease and/or the rent to become due hereunder[.]" *See* Am. Compl., Ex. A, § 20.

3.      Section 4 provides that "in the event of a sale of the building or lease of the land on which it stands, subject to this Lease, the Landlord shall have the right to transfer [the Security Deposit] to the new Landlord and the Landlord shall be considered released by the Tenant from all liability for the return said deposit. It is agreed that this shall apply to every transfer or assignment made of the deposit to a new Landlord." *Id.*

4.      In January of 2018, OMI made a payment of $12,000 to Heaven III, LLC as a security deposit as required under the Lease (the "Security Deposit"). *See* Kramer Declaration at ¶ 9.

5.      On February 15, 2018, Heaven III, LLC assigned to Heaven all leases under which it was the landlord for the building located on the property described as "Block 'A' and the Westerly 22.00 feet of Block "B", Orlando Central Park Number Twenty-Three, according to the Plat thereof, as recorded in Plat Book 4, Page 22, of the Public Records of Orange County, Florida", which includes the Property (the "Assignment"). *Id.* at ¶10.

6.      As a part of the Assignment, Heaven III, LLC transferred the Security Deposit to Heaven. *Id.* at ¶ 11.

7.      On October 31, 2018, Heaven and OMI entered into an amendment to the Lease (the "First Amendment to Lease"), modifying the terms of the Lease regarding the commencement of the Lease and the square footage of the Property. *See* Am. Compl., Ex. A. All other terms and conditions of the Lease remained in full force and effect. *Id.*

8.      Section 2 of the Lease requires OMI to make monthly rent payments, including applicable sales tax, on the first day of each and every month during the lease term. *Id.* at Ex. A, § 2.

9.      Section 13 of the Lease provides that "Tenant shall be in default of this Lease upon failure to pay rent as required hereunder[.]" *Id.* at Ex. A, § 13.

10.     Section 13 further provides that in the event OMI continues to be in default of payment of rent for five business days, Heaven is entitled to assess an administrative late fee equal to 10% of the monthly rent, which is to be assessed each month OMI remains in default of payment of rent. *Id.*

11.     Section 13 further provides: "In the event any payment of rent in default shall not be cured within (7) business days after such default, Landlord shall send the tenant a certified notice of such default and shall allow the tenant an additional three (3) days to cure such default.

If the default by Tenant is not cured after the certified notice, then the payment of any other sums of money required hereunder, shall contain interest at the highest rate allowed by law on the amount of such rental in default and/or other sums of money due[.]" *Id.*

12.     Section 41 of the Lease requires OMI to pay any increases in all of the expenses associated with the operation of the property including, but not limited to, real estate taxes, property insurance, and additional liability insurance, and all of the maintenances associated with common areas. *Id.* at Ex. A, § 41.

13.     Section 16 of the Lease states that "if suit shall be brought or any action be taken by the Landlord without litigation for the recovery of possession of the premises or for the recovery of rent or any other amount due under the provisions of this Lease, or because of the breach of any of the covenants herein contained on the part of the tenant to be kept or performed and a breach shall be established, Tenant shall pay to the Landlord all reasonable costs and expenses incurred therefore, including reasonable attorney's fees…Should any matter herein be litigated or arbitrated, then the prevailing party in such litigation or arbitration will be entitled to attorney's fees and costs[.]" *Id.* at Ex. A, § 16.

14.     Marquez executed and delivered to Heaven a Personal Guaranty (the "Guaranty") absolutely and unconditionally guaranteeing all payments due to Heaven under the Lease. *Id.* at Ex. B; Defendants' First Amended Answer and Affirmative Defenses to Amended Complaint ("Am. Answer") at ¶ 13.

15.     The Guaranty provides that "demand and notice of non-payment or non-performance, diligence in collection and notice of acceptance of this Guaranty are hereby expressly waived." Am. Compl. at Ex. B.

16.     The Guaranty further provides that Marquez "does further covenant and agree to and with [Heaven] and its successors and assigns that [Marquez] may be joined in any action against [OMI] or its successors or assigns, in connection with [the Lease], and that recovery may be had against [Marquez] in such action or in any independent action or proceeding against it, without first exhausting any remedy or claim against [OMI]." *Id.*

17.     During the term of the Lease, Realvest managed the Property on behalf of Heaven. *See* O'Connor Declaration at ¶ 9.

18.     As the property manager, Realvest oversaw the payment of rent owed under the Lease. To that end, Realvest utilized Yardi property management software, which is considered

- 4 -

the most professional and functional system for property management accounting and lease administration, for the processing of rent and other payments owed under the Lease. *Id.* at ¶ 10.

19.    On November 18, 2020, at the direction of Realvest, Heaven sent a letter to all tenants, including OMI, directing all rent payments sent via (1) Wire/ACH to Signature Bank; (2) Regular Mail to a PO Box in Newark, New Jersey, or (3) UPS or FedEx to a FIS-Lockbox in West Deptford, New Jersey. The letter further clarified that "all rent payments must be delivered to account listed above no later than the day on which such amounts are due under the Lease." *Id.* at ¶ 11.

20.    During the term of the Lease, Realvest applied rent payments on a "first in, first out" basis. Meaning, any rent payments made are applied to the oldest past-due rent amounts first. *Id.* at ¶ 12.

21.    Realvest's records reflect that, throughout the term of the Lease, OMI failed to make certain payments as and when due under the Lease. *Id.* at ¶ 13.

22.    OMI failed to pay rent as and when due for August 2022. *Id.* at ¶ 15; Motion at Ex. E, ¶ 2.

23.    As a result of such failure, there is now due and owing the following amounts ("Past Due Rent"):

| | |
|---|---|
| August 2022 Base Rent | $14,599.34 |
| Sales Tax for August 2022 Base Rent | $875.96 |
| *Past Due Rent Subtotal* | $15,475.30 |

O'Connor Declaration at ¶ 15.

24.    OMI failed to pay its proportionate share of real estate taxes for 2019, 2020, and 2021 as required under the Lease. *Id.* at ¶ 16; Motion at Ex. E, ¶¶ 3, 4, & 7.

25.    As a result of such failure, there is now due and owing the following amounts ("Past Due Taxes"):

| | |
|---|---|
| 2019 Real Estate Taxes<br>($4,787.72 taxes, $287.26 sales tax) | $5,074.98 |
| 2020 Real estate taxes<br>($4,615.20 taxes, $276.91 sales tax) | $4,892.11 |

| 2021 Real estate taxes ($6,170.95 taxes, $370.26 sales tax) | $6,541.21 |
|---|---|
| *Past Due Taxes Subtotal* | $16,508.30 |

O'Connor Declaration at ¶ 16.

26.     OMI failed to pay its proportionate share of insurance and common area maintenance ("CAM" ) for 2020 and 2021 as required under the Lease. *Id.* at ¶ 17.

27.     As a result of such failure, there is now due and owing the following amounts ("Past Due Expenses"):

| 2020 insurance increase ($401.31 insurance, $24.08 sales tax) | $425.39 |
|---|---|
| 2020 common area maintenance ($6,993.93 CAM, $419.64 sales tax) | $7,413.57 |
| 2021 insurance increase ($616.40 insurance, $36.99 sales tax) | $653.39 |
| 2021 common area maintenance ($2,318.35 CAM, $139.10 sales tax) | $2,457.45 |
| *Past Due Expenses Subtotal* | $10,949.80 |

*Id.*

28.     Additionally, OMI failed to make certain rent payments as and when due under the Lease. *Id.* at ¶ 18.

29.     Pursuant to the terms of the Lease, and at the direction of Heaven, Realvest assessed late fees in the amount of 10% of certain late rent amounts (the "Late Fees"), where such amounts were not paid within five (5) business days. *Id.* at ¶ 19.

30.     The Late Fees were assessed as described in paragraphs 31-46 below. *Id.*

31.     The base rent due on September 1, 2020 was $13,497.91, plus sales tax in the amount of $809.87. *Id.* at ¶ 20.

    a.  OMI paid the September 2020 rent via a check dated September 11, 2020. *Id.*

    b.  As OMI failed to remit payment for September 2020 within 5 business days of September 1, 2020, Realvest assessed a late fee of 10% of the late rent amount of $13,497.91, or $1,349.79. *Id.*

32.     The base rent due on February 1, 2021 was $14,037.83, plus sales tax in the amount of $842.27. *Id.* at ¶ 21.

    a.  OMI paid the February 2021 rent via a check dated February 11, 2021 in the amount of $14,307.78. *Id.*

    b.  As OMI failed to remit payment for February 2021 within 5 business days of February 1, 2021, Realvest assessed a late fee of 10% of the late rent amount of $14,037.83, or $1,403.78. *Id.*; *see also* Motion at Ex. D, ¶ 14.

33.     The base rent due on March 1, 2021 was $14,037.83, plus sales tax in the amount of $842.27. O'Connor Declaration at ¶ 22.

    a.  On April 1, 2021, OMI delivered a check to the Lock Box a check dated March 24, 2021 in the amount of $14,880.10. *Id.*

    b.  Realvest applied $3,629.12 of the April 1, 2021 payment towards OMI's past due rent balance for February 2021 and $217.75 towards February 2021 sales tax balance. *Id.*

    c.  As OMI failed to remit payment for March 2021 within 5 business days of March 1, 2021, Realvest assessed a late fee of 10% of the late rent amount of $14,037.83, or $1,403.78. *Id.*; *see also* Motion at Ex. D, ¶ 15.

34.     The base rent due on April 1, 2021 was $14,037.83 plus sales tax in the amount of $842.27. O'Connor Declaration at ¶ 23.

    a.  On April 2, 2021, OMI delivered to Realvest a check dated March 23, 2021 in the amount of $15,000.00. *Id.*

    b.  Realvest applied $3,629.12 of the April 2, 2021 payment towards OMI's past due rent balance for March 2021 and $217.75 towards March 2021 sales tax balance. *Id.*

35. The base rent due on May 1, 2021 was $14,037.83 plus sales tax in the amount of $842.27. *Id.* at ¶ 24.

    a. On May 3, 2021, OMI delivered to the Lock Box a check dated April 26, 2021 in the amount of $15,000.00. *Id.*

    b. Realvest applied $3,516.01 of the May 3, 2021 payment towards OMI's past due rent balance for April 2021 and $210.96 towards April 2021 sales tax balance. *Id.*

36. The base rent due on June 1, 2021 was $14,037.83 plus sales tax in the amount of $842.27. *Id.* at ¶ 25.

    a. On June 17, 2021, OMI delivered to the Lockbox a check dated June 10, 2021 in the amount of $14,880.10. *Id.*

    b. Realvest applied $3,402.89 of the June 17, 2021 payment towards OMI's past due rent balance for May 2021 and $204.18 towards the May 2021 sales tax balance. O'Connor Declaration at 25.

        i. As OMI failed to remit payment in full of the past-due rent balance within 5 business days of June 1, 2021, Realvest assessed a late fee of 10% of the late rent amount of $17,444.70 ($3,402.89 from past-due balance for May 2021 plus $14,037.83 from late June 2021 rent), or $1,744.47. *Id.*[1]

37. The base rent due on July 1, 2021 was $14,037.83 plus sales tax in the amount of $842.27. *Id.* at ¶ 26.

    a. On July 9, 2021, OMI delivered to the Lockbox a check dated June 29, 2021 in the amount of $14,880.10. *Id.*

    b. Realvest applied $3,402.89 of the July 9, 2021 payment towards OMI's past due rent balance for June 2021 and $204.18 towards June 2021 sales tax balance. *Id.*

        i. Realvest assessed a late fee in the amount of 10% of the past-due rent balance for July 2021 of $3,402.89, or $340.29.

---

[1] While the Defendants point to OMI's "ledger" in support of its argument that the June 2021 rent payment was timely, *see* Abigail Marquez Aff. at Ex. A, OMI's own evidence shows a "June 2021 Lease PMt" with a "deliver by" date of June 16, 2021. So, even if the ledger would be admissible evidence, it does not create a genuine dispute as to whether OMI's June 2021 rent payment was late or whether OMI failed to tender such payment within five business days of June 1, 2021.

    c.  Realvest applied $3,402.89 of OMI's August 2021 payment towards OMI's July 2021 past-due base rent balance and $204.18 towards OMI's July 2021 sales tax balance. *Id.*

    d.  Realvest applied $3,402.89 of OMI's September 2021 payment towards OMI's August 2021 past-due base rent balance and $204.18 towards OMI's August 2021 sales tax balance. *Id.*

38.  The base rent due on October 1, 2021 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 27.

    a.  On October 19, 2021, OMI delivered to the Lockbox two checks dated October 8, 2021 in the amounts of $15,475.30 and $595.20. *Id.*

    b.  Realvest applied $3,964.41 of the October 19, 2021 payment to OMI's past-due balance for September 2021 and $237.86 towards the past-due balance for September 2021 sales tax. *Id.*

        i.  Realvest assessed a late fee in the amount of 10% of the past-due rent balance for October 2021 of $3,402.89, or $340.29. *Id.*

        ii.  Realvest applied $3,402.89 of OMI's November 2021 payment towards OMI's October 2021 past-due base rent balance and $204.18 towards OMI's past-due October 2021 sales tax balance. *Id.*

39.  The base rent due on December 1, 2021 was $14,599.34, plus sales tax in the amount of $875.96. *Id.* at ¶ 28.

    a.  On December 17, 2021, OMI delivered to the Lockbox a check dated December 8, 2021 in the amount of $15,475.30. *Id.*

    b.  Realvest applied $3,402.89 of OMI's December 2021 payment towards OMI's November 2021 past-due base rent balance and $204.18 towards OMI's past-due November 2021 sales tax balance. *Id.*

        i.  Realvest assessed a late fee in the amount of 10% of the past-due rent balance for December 2021 of $3,402.89, or $340.29. *Id.*

40.  The base rent due on January 1, 2022 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 29.

    a.  On January 19, 2022, OMI delivered to the Lockbox a check dated January 5, 2022 in the amount of $15,475.30. *Id.*

    i. As OMI failed to remit payment for January 2022 within 5 business days of January 1, 2022, Realvest assessed a late fee of 10% of the late rent amount of $14,599.34, or $1,459.93. *Id.*[2]

  b. Realvest applied $3,402.89 of OMI's January 19, 2022 payment towards OMI's December 2021 past-due base rent balance and $204.18 towards OMI's past-due December 2021 sales tax balance. *Id.*

41. The base rent due on February 1, 2022 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 30.

  a. On February 2, 2022, OMI delivered to the Lockbox a check dated January 26, 2022 in the amount of $15,475.30. *Id.*

  b. Realvest applied $3,402.89 of OMI's February 2, 2022 payment towards OMI's January 2022 past-due base rent balance and $204.18 towards OMI's past-due January 2022 sales tax balance. *Id.*

    i. Realvest assessed a late fee in the amount of 10% of the past-due rent balance for February 2022 of $3,402.89, or $340.29. *Id.*

42. The base rent due on March 1, 2022 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 31.

  a. On March 15, 2022, OMI delivered to the Lockbox a check dated March 2, 2022 in the amount of $15,475.30. *Id.* Ms. O'Connor's sworn declaration as to the date of delivery of the March 2022 payment is corroborated the check attached thereto, the backside of which contains a stamp reading 3/15/2022.

    i. OMI's "ledger" showing a "deliver by" date of March 8, 2022 does not create a genuine dispute as to whether OMI failed to remit payment to Heaven by March 1, 2022 or within five business days of March 1, 2022. Aside from the apparent inadmissibility of the "ledger" – neither Marquez nor Ms. Marquez explain the origin of the document or otherwise attempt

---

[2] Again, Defendants point to OMI's "ledger" in support of its argument that the January 2022 rent payment was timely, *see* Abigail Marquez Aff. at Ex. A. However, OMI's own evidence shows a "Jan 2022" payment with a "deliver by" date of January 11, 2022. Therefore, even if the ledger would be admissible evidence, it does not create a genuine dispute as to whether OMI's January 2022 rent payment was late or whether OMI failed to tender such payment within five business days of January 1, 2022.

to authenticate the document as a business record – OMI's own "ledger" shows the "cleared by" date for the March 2022 payment was March 16, 2022, more than five business days beyond March 1, 2022.

    ii. As OMI failed to remit payment for March 2022 within 5 business days of March 1, 2022, Realvest assessed a late fee of 10% of the late rent amount of $14,599.34, or $1,459.93. *Id.*

  b. Realvest applied $3,402.89 of OMI's March 15, 2022 payment towards OMI's February 2022 past-due base rent balance and $204.18 towards OMI's past-due February 2022 sales tax balance. *Id.*

43. The base rent due on April 1, 2022 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 32.

  a. On April 5, 2022, OMI delivered to the Lockbox a check dated March 28, 2022 in the amount of $15,475.30. *Id.*

  b. Realvest applied $3,402.89 of OMI's April 5, 2022 payment towards OMI's March 2022 past-due base rent balance and $204.18 towards OMI's past-due March 2022 sales tax balance. *Id.*

    i. Realvest assessed a late fee in the amount of 10% of the past-due rent balance for April 2022 of $3,402.81, or $340.28. *Id.*

44. The base rent due on May 1, 2022 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 33.

  a. On May 3, 2022, OMI delivered to the Lockbox a check dated April 25, 2022 in the amount of $15,475.30. *Id.*

  b. Realvest applied $3,402.81 of OMI's May 3, 2022 payment towards OMI's April 2022 past-due base rent balance and $204.26 towards OMI's past-due April 2022 sales tax balance. *Id.*

    i. Realvest assessed a late fee in the amount of 10% of the past-due rent balance for May 2022 of $3,402.89, or $340.29. *Id.*

45. The base rent due on June 1, 2022 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 34.

  a. On June 7, 2022, OMI delivered to the Lockbox a check dated May 27, 2022 in the amount of $15,475.30. *Id.*

b. Realvest applied $3,402.89 of OMI's June 2022 payment towards OMI's May 2022 past-due base rent balance and $204.18 towards OMI's past-due May 2022 sales tax balance. *Id.*

c. Despite OMI's past-due rent balance of $3,402.89 for June 2022, Realvest did not assess a late fee. *Id.*

46.    The base rent due on July 1, 2022 was $14,599.34 plus sales tax in the amount of $875.96. *Id.* at ¶ 35.

a. On August 10, 2022, OMI delivered to the Lockbox a check dated August 3, 2022 in the amount of $16,000. *Id.*

  i. As OMI failed to remit payment for July 2022 within 5 business days of July 1, 2022, Realvest assessed a late fee of 10% of the late rent amount of $14,599.34, or $1,459.93. *Id.*[3]

b. Realvest applied $3,402.89 of OMI's August 10, 2022 payment towards OMI's June 2022 past-due base rent balance and $204.18 towards OMI's past-due June 2022 sales tax balance. *Id.*

c. Realvest applied $11,691.45 of OMI's August 10, 2022 payment towards OMI's July 2022 past-due base rent balance and $701.48 towards OMI's past-due July 2022 sales tax balance. *Id.*

47.    As a result of OMI's failure to pay such late fees as required under the Lease, there is now due and owing the following amounts of Late Fees:

| | |
|---|---|
| September 2020 Late Fee (10% of $13,497.91) | $1,349.79 |
| February 2021 Late Fee (10% of $14,037.83) | $1,403.78 |
| March 2021 Late Fee (10% of $14,037.83) | $1,403.78 |
| June 2021 Late Fee (10% of $17,444.70) | $1,744.07 |
| July 2021 Late Fee (10% of $3,402.89) | $340.29 |

---

[3] OMI's "ledger" in support of its argument that the July 2022 rent payment was timely shows a "July 2022 Lease PMT" with a "deliver by" date of August 2, 2022. *See* Abigail Marquez Aff. at Ex. A. Therefore, even if the ledger would be admissible evidence, it does not create a genuine dispute as to whether OMI's July 2022 rent payment was late or whether OMI failed to tender such payment within five business days of July 1, 2022.

| | |
|---|---|
| October 2021 Late Fee (10% of $3,402.89) | $340.29 |
| December 2021 Late Fee (10% on $3,402.89) | $340.29 |
| January 2022 Late Fee (10% on $14,599.34) | $1,459.93 |
| February 2022 Late Fee (10% on $3,402.89) | $340.29 |
| March 2022 Late Fee (10% on $14,599.34) | $1,459.93 |
| April 2022 Late Fee (10% on $3,402.81) | $340.28 |
| May 2022 Late Fee (10% on $3,402.89) | $340.29 |
| July 2022 Late Fee (10% on $14,599.34) | $1,459.93 |
| *Late Fees Subtotal* | $12,322.94 |

*Id.* at ¶ 36.

48.     Realvest did not assess any of the Late Fees described in this Motion as a result of the application of otherwise timely rental payments to a past-due balance of late fees. *Id.* at ¶ 37.

49.     The total of Past-Due Real Estate Taxes, Past-Due Expenses, and Late Fees owed is $55,256.34 (the "Default Amount"). *Id.* at ¶ 38.

50.     On August 15, 2022, as a result of OMI's defaults under the Lease, Heaven provided the Defendants notice of the events of default and demanded OMI's curing of said defaults (the "Notice"). *See* Am. Compl., Ex. C.

51.     The Notice demanded that OMI cure its defaults under the Lease and advised OMI that failure to pay the Default Amount would result in the application of interest to such amount at the highest rate allowed by law. *Id.*

52.     The Notice was sent to the Defendants via Certified Overnight Mail, as required as to OMI by Section 17 of the Lease, as well as via hand-delivery and email. *Id.*

53.     On August 15, 2022, Heaven initiated the above-captioned lawsuit (the "Action") by filing a Complaint against Marquez for breach of the Guaranty. *See* Compl.

54.     On August 29, 2022, fourteen days after it provided OMI with the Notice, Plaintiff filed the Amended Complaint, which added OMI as a defendant for the first time. *See* Am. Compl.

55.     As of the date of this Motion, OMI has failed to pay the Default Amount. O'Connor Declaration at ¶ 39.

- 13 -

56.    OMI has not made any payments into the Court Registry for payments owed under the Lease during the pendency of this Action. Motion at Ex. E, ¶ 25.

57.    Marquez has not made any payments to Heaven for amounts owed under the Lease pursuant to the Guaranty. Motion at Ex. E, ¶ 26; O'Connor Declaration at ¶ 40.

58.    Marquez has not made any payment into the Court Registry for payments owed under the Guaranty during the pendency of this Action. Motion at Ex. E, ¶ 25.

59.    On August 19, 2022, during the term of the Lease, Heaven sold the building in which the Property sits (the "Property Sale"). Kramer Declaration at ¶ 12.

60.    As a part of the Property Sale, Heaven transferred to the buyer all security deposits currently held by Heaven for leases of premises in the building sold, including the Security Deposit paid by OMI. *Id.* at ¶ 13.

61.    Heaven has incurred attorneys' fees and costs in this Action.

## LEGAL STANDARD

Under Florida Rule of Civil Procedure 1.510, as recently amended, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). Courts must now construe and apply Florida's summary judgment standard in accordance with the federal summary judgment standard. The test for the existence of a genuine factual dispute is now whether "the evidence is such that [the trier of fact] could return a verdict for the nonmoving party." *In re Amendments to Florida Rule of Civil Procedure 1.510*, 317 So.3d 72, 75 (2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Rich v. Narog*, 366 So. 3d 1111, 1118 (Fla. 3d DCA 2022) ("The trial court… must determine…whether the nonmovant's evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. That is to say, the nonmovant's evidence must be of sufficient weight and quality that reasonable jurors could find by a preponderance of the evidence that [the nonmovant] is entitled to a verdict. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal citations and quotations omitted).

The Florida Supreme Court has clarified that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part" of rules aimed at

"the just, speedy and inexpensive determination of every action." *In re Amendments to Florida Rule of Civil Procedure 1.510*, 317 So.3d at 75 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## DISCUSSION

I.    **Heaven is Entitled to Summary Judgment as a Matter of Law on Counts I and II of the Amended Complaint.**

Heaven may prevail on its claims for breach of the Lease and the Guaranty by showing: "(1) a valid contract; (2) a material breach of the contract; and (3) damages." *See Burlington & Rockenbach, P.A. v. L. Offs. of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015). Here, it is undisputed that the Lease and Guaranty are valid contracts, the Defendants materially breached those contracts, and Heaven has suffered damages as a result of such breaches.

a.    **Defendants have materially breached the Lease and Guaranty.**

The admissible summary judgment evidence shows that there is no genuine dispute that the Defendants have materially breached the Lease and Guaranty. "To establish a material breach, the party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties." *Id.* at 960. Here, OMI has materially breached the Lease in several respects.

First, OMI expressly admits it failed to make a rent payment as and when due under the Lease for August 2022, and such failure violates Section 2 of the Lease. Motion at Ex. E, ¶ 2; Am. Compl. at Ex. A, § 2; *see also* O'Connor Declaration at ¶ 15. OMI also breached Section 2 of the Lease by failing to make rent payments, including the applicable sales tax, as and when due under the Lease for September 2020, February 2021, March 2021, June 2021, July 2021, October 2021, December 2021, January 2022, February 2022, March 2022, April 2022, May 2022 and July 2022. O'Connor Declaration at ¶¶ 20-35; Am. Compl. at Ex. A, § 2.

Second, OMI has expressly admitted that it failed to pay its proportionate share of real estate taxes for 2019, 2020, and 2021, and such failures violate Section 41 of the Lease. Motion at Ex. E, ¶¶ 3-4, 7; Am. Compl. at Ex. A, § 41; *see also* O'Connor Declaration at ¶ 16. OMI also breached Section 41 of the Lease by failing to pay its proportionate share of insurance and common area maintenance for 2020 and 2021 as required under the Lease. O'Connor Declaration at ¶ 17; Am. Compl. at Ex. A, § 41.

These breaches are far from "trivial noncompliance and minor failings," as the payment of rent and other taxes and expenses to Heaven in exchange for OMI's occupancy of the Property "goes to the essence of the contract." *See Burlington*, 160 So. 3d at 960.

Likewise, Marquez expressly admits he failed to pay any of the amounts owed to Heaven by OMI, including the amounts Marquez has admitted OMI failed to pay under the Lease. Motion at Ex. E, ¶¶ 2-4, 7, 26; *see also* O'Connor Declaration, at ¶ 40. These failures constitute a material breach of the Guaranty, the purpose of which is to absolutely and unconditionally guarantee all payments due to Heaven under the Lease. *Am. Compl.* at Ex. B.

Accordingly, there is no genuine dispute that Defendants materially breached the Lease and the Guaranty.

> **b. Heaven has Sustained Damages as a Result of the Defendants' Material Breaches.**

Heaven has been damaged as a result of Defendants' breaches of the Lease and the Guaranty.

> **i. Lease Damages.**

Pursuant to the terms of the Lease, Heaven has sustained the following damages as a result of OMI's failure to pay all amounts due to Heaven under the Lease:

*Past-Due Rent*

OMI has failed to pay the base rent or sales tax owed to Heaven for August 2022. O'Connor Declaration at ¶ 15; Motion at Ex. E, ¶ 2. Therefore, Heaven has been damaged in the amount of $15,475.30, plus interest. *See* O'Connor Declaration at ¶ 15.

*Past-Due Taxes*

Pursuant to Section 41 of the Lease, OMI was required to pay any increases in all of the expenses associated with the operation of the Property including, but not limited to, real estate taxes. *See* Am. Compl., Ex. A at § 41. OMI failed to pay its proportionate share of real estate taxes

for 2019, 2020, and 2021 as required. *See* O'Connor Declaration at ¶ 16; Motion at Ex. E, ¶¶ 3, 4, & 7. As a result of such failure, Heaven has been damaged in the amount of $16,508.30. *See* O'Connor Declaration at ¶ 16.

### Past-Due Expenses

Pursuant to Section 41 of the Lease, OMI was also required to pay additional liability insurance and all of the maintenances associated with common areas. *See* Am. Compl., Ex. A at § 41. OMI failed to pay its proportionate share of insurance and common area maintenance for 2020 and 2021 as required. *See* O'Connor Declaration at ¶ 17. As a result of such failure, Heaven has been damaged in the amount of $10,949.80. *Id.*

### Late Fees

Section 13 of the Lease provides that in the event OMI fails to pay rent as required thereunder, OMI would be in default of the Lease. *See* Am. Compl., Ex. A at § 13. Section 13 further provides that in the event OMI continues to be in default for five (5) business days after the rent is due and payable, Heaven is entitled to assess an administrative late fee equal to 10% of the monthly rent, which is to be assessed each month OMI remains in default of payment of rent. *Id.*

Due to OMI's failure to make payments as and when due under the Lease, Heaven exercised its right to assess administrative late fees where such payments were not paid within five (5) business days. *See* O'Connor Declaration at ¶¶ 20-35. OMI has failed to pay such late fees as required. *Id.* at ¶ 39. As a result of such failure, Heaven has been damaged in the amount of $12,322.94. *Id.*

### Total Default Amount

The total of Past-Due Rent, Past-Due Taxes, Past-Due Expenses, and Late Fees owed is $55,256.34 (the "Default Amount"). *See* O'Connor Declaration at ¶ 38.

### ii.  Pre-Judgment Interest.

The Court finds that as OMI failed to cure the defaults caused by its failure to pay the Past-Due Expenses, Past-Due Taxes, and Past-Due Rent within 3 days of the Notice, such amounts owed under the Lease "shall contain interest at the highest rate allowed by law" on such amounts owed.  *See* Am. Compl. at Ex. A, § 13. Section 687.01, Florida Statutes, states: "In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03." Fla. Stat. § 687.01. In turn, section 55.03 requires the Chief Financial Officer ("CFO")

to set the rate of interest payable on judgments and decrees on December 1, March 1, June 1, and September 1 of each year for the following applicable quarter. Fla. Stat. § 55.03. As such, the damages owed to Heaven include pre-judgment interest at the rates below:

| Effective Date | Rate Per Annum | Daily Rate as a Percentage | Daily Rate as a Decimal |
|---|---|---|---|
| January 1, 2024 | 9.09% | .0248361% | .000248361 |
| October 1, 2023 | 8.54% | .0233973 | .000233973 |
| July 1, 2023 | 7.69% | .0210685% | .000210685 |
| April 1, 2023 | 6.58% | .0180274% | .000180274 |
| January 1, 2023 | 5.52% | .0151233% | .000151233 |
| October 1, 2022 | 4.75% | .0130137% | .000130137 |
| July 1, 2022 | 4.34% | .0118904% | .000118904 |

In accordance with the Lease and Section 687.01, Florida Statutes, Heaven is entitled to interest on the Past-Due Rent ($15,475.30) at the *per diem* rate of $1.84 from August 18, 2022 (i.e., the end of the 3-day notice period) through September 30, 2022; at the *per diem* rate of $2.01 from October 1, 2022 through December 31, 2022; at the *per diem* rate of $2.34 from January 1, 2023 through March 31, 2023; at the *per diem* rate of $2.79 from April 1, 2023 through June 30, 2023; at the *per diem* rate of $3.26 from July 1, 2023 through September 30, 2023; at the *per diem* rate of $3.62 from October 1, 2023 through December 31, 2023; and at the *per diem* rate of $3.84 from January 1, 2024 through the date of this Final Summary Judgment.

Additionally, Heaven is entitled to interest on the Past-Due Taxes ($16,508.30) at the *per diem* rate of $1.96 from August 18, 2022 through September 30, 2022; at the *per diem* rate of $2.15 from October 1, 2022 through December 31, 2022; at the *per diem* rate of $2.50 from January 1, 2023 through March 31, 2023; at the *per diem* rate of $2.98 from April 1, 2023 through June 30, 2023; at the *per diem* rate of $3.26 from July 1, 2023 through September 30, 2023; at the *per diem* rate of $3.86 from October 1, 2023 through December 31, 2023; and at the *per diem* rate of $3.62 from October 1, 2023 through December 31, 2023; and at the *per diem* rate of $4.10 from January 1, 2024 through the date of this Final Summary Judgment.

Finally, Heaven is entitled to Past-Due Expenses ($10,949.80) at the *per diem* rate of $1.30 from August 18, 2022 through September 30, 2022; at the *per diem* rate of $1.42 from October 1, 2022 through December 31, 2022; at the *per diem* rate of $1.66 from January 1, 2023 through March 31, 2023; at the *per diem* rate of $1.97 from April 1, 2023 through June 30, 2023; at the *per diem* rate of $2.30 from July 1, 2023 through September 30, 2023; at the *per diem* rate of $2.56 from October 1, 2023 through December 31, 2023; and at the *per diem* rate of $3.62 from October 1, 2023 through December 31, 2023; and at the *per diem* rate of $2.72 from January 1, 2024 through the date of this Final Summary Judgment.

### Total Lease Damages

Therefore, the Court concludes Heaven is entitled to damages under the Lease in the amount of **$58,740.29** (the "Lease Damages"), together with pre- and post-judgment interest on the Past-Due Rent, Past-Due Taxes, and Past-Due Expenses that continues to accrue at the *per diem* rate of $10.66 through the date of this Final Summary Judgment and at the *per diem* rate to be set by the CFO on April 1, 2024, and reasonable attorneys' fees and costs incurred by Heaven in seeking the Default Amount or otherwise enforcing its rights under the Lease:

| | |
|---|---|
| Past-Due Rent | $15,475.30 |
| Pre-Judgment Interest as of 2/7/2024 on Past-Due Rent | $1,255.79 |
| Past-Due Taxes | $16,508.30 |
| Pre-Judgment Interest as of 2/7/2024 on Past-Due Taxes | $1,339.61 |
| Past-Due Expenses | $10,949.80 |
| Pre-Judgment Interest as of 2/7/2024 on Past-Due Expenses | $888.55 |
| Lates Fees | $12,322.94 |
| ***Total Lease Damages*** | **$58,740.29**, plus pre- and post-judgment interest on the Past-Due Rent, Past-Due Taxes, and Past-Due Expenses that continues to accrue at the *per diem* rate of $10.66 through the date of this Final Summary Judgment and at the *per diem* rate to be set by the CFO on April 1, 2024, and reasonable attorneys' fees and costs. |

### iii.  Guaranty Damages.

The Court finds that pursuant to the terms of the Guaranty, which is unconditional in nature, Heaven has sustained the following damages as a result of Marquez's breach of the Guaranty:

*Liability Under the Guaranty*

The Guaranty states in no uncertain terms that Marquez is responsible for all payments due to Heaven under the Lease. Am. Compl., Ex. B. Specifically, the Guaranty provides that Marquez "does further covenant and agree to and with [Heaven] and its successors and assigns that [Marquez] may be joined in any action against [OMI] or its successors or assigns, in connection with [the Lease], and that recovery may be had against [Marquez] in such action or in any independent action or proceeding against it, without first exhausting any remedy or claim against [OMI]." *Id.* In other words, Marquez is liable for the exact damages that Heaven has sustained as a result of OMI's breaches of the Lease. There is no limitation on Marquez's liability as guarantor. *Id.* ("This Guaranty is absolute and unconditional[.]"). *Id.*

*Total Amount of Guaranty Damages*

Given the unconditional and unlimited nature of the Guaranty, the Court finds Marquez owes to Heaven all Lease Damages, or **$58,740.29**. Thus, there is no dispute of material fact that these amounts constitute the express payment obligations of Marquez pursuant to the terms of the Lease and the Guaranty.  Additionally, there is no dispute that neither OMI nor Marquez has made payment to Heaven of these amounts. *See* O'Connor Declaration at ¶¶ 39-40. Therefore, Heaven is entitled to the entry of summary judgment against Marquez in the amount of **$58,740.29**, together with pre- and post-judgment interest on the Past-Due Rent, Past-Due Taxes, and Past-Due Expenses that continues to accrue at the *per diem* rate of $10.66 through the date of this Final Summary Judgment and at the *per diem* rate to be set by the CFO on April 1, 2024, and reasonable attorneys' fees and costs, incurred by Heaven in seeking the Default Amount or otherwise enforcing its rights under the Lease.

## II.    Defendants' Affirmative Defenses Do Not Preclude Summary Judgment.

Critically, Defendants bear the burden of proof on affirmative defenses at trial. Thus, at the summary judgment stage, it is incumbent on Defendants to create a genuine dispute of material fact on such defenses by pointing to summary judgment evidence. The "burden is on the defendant to adduce evidence supporting affirmative defense, not upon the movant to negate its existence." *Shenzhen Kinwong Elec. Co., Ltd.v. Kukreja*, 574 F. SUpp. 3d 1191, 1241 (S.D. Fla. 2021)

(cleaned up) (quoting *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1090 (D. Del. 1990); *see also Johnson v. Bd. Of Regents of Univ. of Ga.*, 263 F.3d 1234, 1264 (11th Cir. 2001). Defendants have not done so.

In response to the Amended Complaint, Defendants asserted seven affirmative defenses, all of which are addressed in the Motion. However, Defendants' summary judgment response does not rely on all of the affirmative defenses. None of the affirmative defenses raised by Defendants defeat summary judgment. The Court addresses each affirmative defense in turn.

### a. First Affirmative Defense - Failure to Satisfy Conditions Precedent and/or State a Cause of Action.

Defendants' First Affirmative Defense fails as a matter of law. Defendants assert that "by failing to provide the proper timeframe in the notice of default and by failing to offer the proper party an opportunity to cure any alleged default, [Heaven], by way of the defective notice, has failed to satisfy a condition precedent to filing this action and failed to state a cause of action." Am Answer at ¶ 32.

As a threshold matter, this Court already rejected this argument when it denied Defendants' Motion to Dismiss Amended Complaint filed on September 28, 2022 (the "Motion to Dismiss"). As in Defendants' First Affirmative Defense, Defendants asserted in their Motion to Dismiss that "by failing to provide the proper timeframe in the notice of default and by failing to offer the proper party an opportunity to cure any alleged default, [Heaven], by way of the defective notice, has failed to satisfy a condition precedent to filing this action and failed to state a cause of action." *See* Defendants' Motion to Dismiss at 1. Indeed, this argument was the sole basis of the Defendants' Motion to Dismiss, *see id.*, and this Court already expressly rejected such argument, *see* Order on Defendants' Motion to Dismiss Amended Complaint, entered on November 17, 2022. Specifically, under the terms of the Lease, notice of default and an opportunity to cure is not a condition precedent to suit. Rather, it is a condition precedent to Plaintiff's application of "interest as the highest rate allowed by law[.]" Am. Compl. at Ex. A, sec. 13.

Regardless, this affirmative defense does not preclude entry of summary judgment in Heaven's favor, as Heaven has provided notice to OMI, and Defendants have failed to cure the defaults. Heaven did not initiate this Action against OMI until it filed the Amended Complaint on August 29, 2022, fourteen (14) days after serving OMI with the Notice via certified overnight mail, email, and hand-delivery on August 15, 2022. Am. Compl. at Ex. C. Therefore, Defendants'

- 21 -

suggestion that Heaven "fail[ed]to provide the proper timeframe in the notice of default" is unsupported by the record.

In their Response, Defendants argue that the Notice was also defective because it includes "CAM charges." Defendants fail to cite to any authority in support of this position, and the Court concludes that the inclusion of CAM in the Notice does not make the Notice defective.

The fact that Heaven filed suit against Marquez as guarantor has no bearing on the issue of whether the Notice to OMI is defective. Defendants cite no authority to the contrary in their First Affirmative Defense (or their Response). Moreover, Heaven is not required to provide Marquez notice of default or an opportunity to cure under the terms of the Guaranty. In fact, the Guaranty provides that Heaven has no duty to take action pursuant to the Lease, or any action taken in enforcement of its terms, before it is entitled to enforce the Guaranty. Am. Compl. at Ex. B ("Demand and notice of non-payment or non-performance…are hereby expressly waived."). Additionally, the issue of whether filing suit on August 15, 2022 was premature became moot when Heaven filed an Amended Complaint on August 29, 2022, well after the close of the 3-day notice period required to be provided to OMI under the Lease. Again, Defendants cite no authority to the contrary.

Defendants' argument in their Response that "the relation back of amendments" under Florida Rule of Civil Procedure 1.190 precludes summary judgment in favor of Heaven is without merit. *See* Response at 3. Florida law is clear that the relation back doctrine relates to the application of statutes of limitation, and it applies where the plaintiff has amended their complaint by adding or modifying claims against an existing party. *See, e.g.*, *Caduceus Props., LLC v. Graney*, 137 So. 3d 987, 993 (Fla. 2014) (stating that the relation back doctrine generally does not apply "when an amendment seeks to bring in an entirely new party defendant to the suit after the statute of limitations period has expired"). Defendants have failed to cite to, and this Court is not aware of, any authority that supports Defendants' position that Rule 1.190 applies to an amendment which adds a new party to an action or otherwise acts to nullify a notice of default.

Accordingly, Heaven is entitled to summary judgment in its favor on Counts I and II of the Amended Complaint.

### b. Second Affirmative Defense – Setoff.

In their Response, Defendants argue "the Defendants should be entitled to a set off for moneys paid to Plaintiff, such as the $12,000 security deposit, overpayment of CAM, and over

payment of rent due to square footage being incorrect for several years." Response at 4. Defendants have failed to produce any evidence showing Heaven is liable to either OMI or Marquez for any amounts, let alone any amounts that should be setoff from the damages to be awarded to Heaven under Counts I and II of the Amended Complaint.

Defendants fail to specifically identify what amount for "overpayment" of CAM or rent should be setoff, and Defendants have not pointed to any record evidence that would create a genuine issue of material fact. In fact, Heaven has submitted undisputed evidence that OMI underpaid CAM and rent.

While OMI has specifically identified the Security Deposit in the amount of $12,000, Heaven has submitted undisputed evidence that that Heaven sold the building in which the Property sits on August 19, 2022, and that Heaven transferred the Security Deposit to the buyer as a part of the Property Sale. *See* Kramer Declaration at ¶¶ 12-13.

Defendants do not argue that such a transfer would fail to release Heaven of liability to OMI for the Security Deposit, and the express terms of the Lease would refute any such argument. The Lease states that "in the event of a sale of the building …, subject to this Lease, the Landlord shall have the right to transfer [the Security Deposit] to the new Landlord and the Landlord shall be considered released by the Tenant from all liability for the return said deposit. It is agreed that this shall apply to every transfer or assignment made of the deposit to a new Landlord." Am. Compl. at Ex. A, § 4. Accordingly, the Court concludes that pursuant to Section 4 of the Lease, upon the Property Sale, Heaven was "released by [OMI] from all liability for the return of the [Security Deposit]." Am. Compl. at Ex. A, § 4.[4] Therefore, the final judgment in this matter will not be set off by the amount of the Security Deposit.

---

[4] The Court notes that Defendants raised, for the first time at the hearing on February 7, 2024, that through Heaven's sale of the building in which the Property sits on August 19, 2022, Heaven is no longer a "landlord" and therefore lacks the ability to bring an action for breach of the Lease that has been assigned to the purchaser. However, the Court will not consider such an argument, where it was not raised in Defendants' Response. *See* Fla. R. Civ. P. 1.510(c) (requiring the nonmoving party to file its "response that includes the nonmovant's supporting factual position" no less than 20 days before the hearing); *see also Design Neuroscience Centers, P.L. v. Preston J. Fields, P.A.*, 359 So. 3d 1232, 1235 (Fla. 3d DCA 2023) (reversing the trial court's granting of summary judgment where such ruling was based on arguments made for the first time in a an untimely-filed reply). Notwithstanding, the Court notes there is no evidence in the record that Heaven transferred or assigned OMI's debt to the purchaser.

### c. Third Affirmative Defense: Standing/Failure to Join Indispensable Party.

The Court finds that Defendants' Third Affirmative Defense fails as a matter of law, as it ignores both Heaven's status as the successor in interest to Heaven III, LLC and the express language of the contracts between the parties. In their Third Affirmative Defense, Defendants allege: "The Lease and Guaranty attached to the Complaint in this action lists Heaven III, LLC as a party--Defendant has had no contractual relationship with the named plaintiff Heaven 3 RE, LLC who is a stranger to the Defendant. There is simply no lease, no guaranty, no contract, and no relationship between the Plaintiff and the Defendant." Am. Answer at ¶ 35.

However, Heaven is the successor in interest to Heaven III, LLC. It is undisputed that on February 15, 2018, Heaven III, LLC assigned to Heaven all leases under which it was the landlord for the building located on the property described as "Block 'A' and the Westerly 22.00 feet of Block "B", Orlando Central Park Number Twenty-Three, according to the Plat thereof, as recorded in Plat Book 4, Page 22, of the Public Records of Orange County, Florida", which includes the Property. *See* Kramer Declaration at ¶ 10.

The record also reflects that Heaven III, LLC was entitled pursuant to the Lease to assign such Lease to Heaven, as OMI agreed that Heaven III, LLC may assign the Lease at any time, and the rights and obligations under the Lease are applicable to the signatories and their successors and assigns. *Am. Compl.* at Ex. A, § 20 ("It is also mutually agreed that Landlord shall have the right at any and all times, without the necessity of obtaining the consent of Tenant, to assign this Lease and/or the rent to become due hereunder[.]"). Additionally, Section 21 of the Lease entered between OMI and Heaven III, LLC, signed November 7, 2017, specifies that the terms "Landlord" as used therein "shall include the…successors and/or assigns of the respective parties [to the Lease]." *Id.* at § 21. Likewise, a cursory review of the Guaranty between Marquez and Heaven III, LLC reveals that Marquez "agree[d] to and with LANDLORD and its successors and assigns[.]" *Am. Compl.* at Ex. B. Accordingly, the Court concludes that Heaven has standing and Heaven III, LLC is not an indispensable party, as it no longer has any rights or obligations under the Lease.

Moreover, it is undisputed that after this assignment, on October 31, 2018, OMI and the named Plaintiff in this action, Heaven 3 Re, LLC, "as successor in interest to Heaven III, LLC," entered into the First Amendment to Lease. *Am. Compl.* at Ex. A. So, Defendants' allegation that "there is simply no lease, no guaranty, no contract, and no relationship between the Plaintiff and the Defendant" is unsupported by the record. And, while the property was sold by Heaven,

Defendants have presented no record evidence to show that entitlement to any unpaid rent was assigned to the new property owner.

Therefore, as Heaven is the successor in interest to Heaven III, LLC, and because Heaven is a party to the Lease in its own right, the Court concludes that Defendants' Third Affirmative Defense fails to preclude the entry of summary judgment on Counts I and II in favor of Heaven.

### d. Fourth Affirmative Defense - Unclean Hands.

Defendants' Fourth Affirmative Defense fails to preclude summary judgment in two respects. First, this is an action for money damages, and the unclean hands doctrine is an equitable defense that acts only to preclude equitable relief. *See Congress Park Office Condos II, LLC v. First-Citizens Bank & Tr. Co.*, 105 So. 3d 602, 609 (Fla. 4th DCA 2013) (explaining that unclean hands is an equitable defense, because it "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief") (internal citations omitted); *O'Neal v. Florida A&M University ex rel. Bd. Of Trustees for Florida A&M University*, 989 So.2d 6, 9 (Fla. 1st DCA 2008) ("The general rule is that 'where an action is simply ... for the recovery of a money judgment, the action is one at law.'") (citation omitted).

Second, the only evidence Defendants cite in support of this defense, the draft tenant estoppel certificate, does not creates a genuine issue of material fact as to whether Heaven came to this Court with unclean hands. *See* Response at 5; Am. Compl. at Ex. C. Accordingly, Defendants' Fourth Affirmative Defense fails to preclude entry of summary judgment in favor of Heaven.

### e. Fifth Affirmative Defense - Failure to Mitigate Damages.

As Defendants did not argue that their Fifth Affirmative Defense precludes summary judgment in their Response, Defendants have abandoned this defense. However, even if Defendants included an argument regarding mitigation in their Response, the Court concludes that Heaven was under no affirmative obligation under either the Lease or the Guaranty to mitigate its damages. *See* Am. Compl., Exs. A-B. Florida law is clear that a commercial landlord has no common law duty to mitigate its damages upon the breach of its commercial tenant, and a landlord is therefore under no duty to mitigate its damages absent express language in the contract requiring such mitigation. *See Young v. Morris Realty Co.*, 569 So. 2d 813, 815 (Fla. 1st DCA 1990) (holding a dispute as to whether the landlord mitigated its damages did not preclude summary judgment because "there is no common law duty to mitigate" and the lease agreement at issue

"provides only an *option* to the landlord to take possession and lease the premises upon a breach, but it does not impose this option upon the landlord as a *requirement*") (emphasis in original). Additionally, the Guaranty expressly disavows any duty on the part of Heaven to mitigate damages. *See* Am. Compl., Ex. B. Therefore, the Defendants' Fifth Affirmative Defense does not create a genuine issue of material fact, and Heaven is entitled to summary judgment in its favor on Counts I and II of the Amended Complaint.

> **f.  Sixth Affirmative Defense - Prior Breach.**

Upon review of the record, the Court concludes there is no genuine issue of material fact to preclude summary judgment in favor of Heaven on Defendants' Sixth Affirmative Defense. Defendants argue the following actions or inactions by Heaven support their allegation that Heaven committed a "prior breach": (1) "not applying payments correctly and/or determining that payments were late even though they arrive on time to Plaintiff"; (2) "charging Defendants for CAM that is not owed and that Defendants are not obligated to pay"; (3) "not providing the alleged default Notice as required by the Lease Agreement and demanding Defendants sign a false document." Response at 5.  However, there is no evidence in the record to create any genuine issue of material fact as to whether Heaven committed a prior breach of the Lease. Accordingly, the Court concludes that Defendants' Sixth Affirmative Defense fails to preclude summary judgment in favor of Heaven.

> **g.  Seventh Affirmative Defense – Payment.**

This purported affirmative defense is, in reality, a denial of Heaven's allegations, and it is unsupported by the record. Defendants state:

> Defendants make payments that [Heaven] has not given Defendants credit for in full. These payments where timely, but Plaintiff still assessed a late fee and other charges, thereby making the payment not the full amount to satisfy that months obligation. However, since the payments were timely, they should have satisfied all amounts due for that month.

A legally sufficient defense must raise new matters to avoid liability for claims raised in the Amended Complaint and not merely deny allegations set forth therein.  *See Gatt v. Keyes Corp.*, 446 So. 2d 211, 212 (Fla. 3d DCA 1984) (striking affirmative defenses that merely denied facts contained in complaint). Heaven raised this objection to Defendants' nearly identical "affirmative defense" for failure to state a legal defense in its Motion To Strike Defendants' Affirmative Defenses, filed on December 27, 2022 (the "Motion to Strike"). As discussed above, there is no

genuine issue of material fact as to OMI's failure to make the payments outlined in the Motion. Heaven has put forth evidence that that is not genuinely disputed that OMI failed to make payments as and when due under the Lease, and that "Realvest never assessed a late fee against OMI as a result of the application of otherwise timely rental payments to a past-due balance of late fees." O'Connor Declaration at ¶¶ 18-37. Accordingly, there is no genuine dispute as to any material fact regarding the Seventh Affirmative Defense, and such purported affirmative defense do not preclude the entry of summary judgment in favor of Heaven.

Given that each of the Defendants' affirmative defenses fails to defeat Heaven's entitlement to entry of summary judgment in its favor, this Court will enter summary judgment against OMI on Count I and against Marquez on Count II of the Amended Complaint.

## III. Attorneys' Fees and Costs.

The Court finds Heaven is entitled to an award of its reasonable attorney's fees and costs incurred in the prosecution of this Action. Section 16 of the Lease states:

> [I]f suit shall be brought or any action be taken by the Landlord without litigation for the recovery of possession of the premises or for the recovery of rent or any other amount due under the provisions of this Lease, or because of the breach of any of the covenants herein contained on the part of the tenant to be kept or performed and a breach shall be established, Tenant shall pay to the Landlord all reasonable costs and expenses incurred therefore, including reasonable attorney's fees…Should any matter herein be litigated or arbitrated, then the prevailing party in such litigation or arbitration will be entitled to attorney's fees and costs[.]
> *Am. Compl.* at Ex. A, § 16.

As Heaven is entitled to summary judgment in its favor on Counts I and II of the Amended Complaint, OMI is liable to Heaven for all attorneys' fees and costs it reasonably incurred in bringing this Action pursuant to the Lease. *Id.* As Marquez absolutely and unconditionally guaranteed all amounts owed by OMI pursuant to the Lease, *see Am. Compl.* at Ex. B, the Court finds Marquez is likewise liable to Heaven for its reasonable attorneys' fees and costs.

## CONCLUSION

For the reasons discussed above, it is **ORDERED** and **ADJUDGED** that:

1.       The Court **GRANTS** the Motion.

2.       Final summary judgment is hereby entered in favor of Heaven and against OMI on Count I of the Amended Complaint, in the amount of **$58,740.29**, jointly and severally up to the amount of the award issued against Marquez, of which total shall bear interest at the statutory rate

in accordance with Section 55.03, *Florida Statutes*, ALL FOR WHICH LET EXECUTION ISSUE FORTHWITH;

3.      The Court enters final summary judgment in favor of Heaven and against Marquez on Count II of the Amended Complaint, in the amount of **$58,740.29**, jointly and severally up to the amount of the award issued against OMI, of which total shall bear interest at the statutory rate in accordance with Section 55.03, *Florida Statutes*, ALL FOR WHICH LET EXECUTION ISSUE FORTHWITH;

4.      Pursuant to Section 55.10(1), *Florida Statutes*, OMI's last known address is 6925 Lake Ellenor Drive Building 3, Suite 300, Orlando, Florida 32809.

5.      Pursuant to Section 55.10(1), *Florida Statutes*, Marquez's last known address is 9728 Brown Burrow St., Orlando, Florida 32829.

6.      The Court awards Heaven its reasonable attorneys' fees and costs incurred in the prosecution of this Action. The Court reserves jurisdiction to adjudicate the amount of attorneys' fees and costs to be paid to Heaven by the Defendants.

7.      The Court further reserves jurisdiction to adjudicate the amount of attorneys' fees and costs awarded by this Court in its Order Granting Plaintiff's Motion to Compel Defendants' Discovery Responses and for Sanctions entered on May 1, 2023.

**DONE AND ORDERED** in chambers in Orange County, Florida on March 8, 2024.

eSigned by Eric J Netcher  03/08/2024 11:50:22 GGYCuFZS

CIRCUIT JUDGE

## CERTIFICATE OF SERVICE

The Court certifies that the foregoing was filed with the Clerk of the Court by using the Florida Courts E-Filing Portal System. Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the ePortal Electronic Service List, via transmission of Notices of Electronic Filing generated by the ePortal System.

E. Ginnette Childs, Esq.          Via Portal

John A. Morey, Esq.               Via Portal

- 28 -

EXHIBIT "B"

**IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA**

Case number:  2022-CA-007527-O
Plaintiff Heaven 3 RE, LLC's
Amended Motion for Final Judgment
of Writs of Garnishment

## <u>COURT MINUTES</u>

COURT OPENED 8:45 AM on 5th day of December, 2024 in Video/Audio/Tele
Conference
This case came on this day for Motion
Honorable Netcher, Eric J , presiding

Heaven 3 Re Llc

_____

Petitioner / Plaintiff
VS
Felix Marquez; Orlando Medical Institute Inc

_____

Respondent / Defendant

<u>Parties Present:</u>

MOREY, JOHN            Attorney
ANDREW, Esquire
SCHNEIDER, LESLIE       Attorney
MARK, Esquire


- Court reporter: N/A

Court Deputy: N/A


Court's Ruling: The Court grants Plaintiff Heaven 3 RE, LLC's Amended Motion for
Final Judgment of Writs of Garnishment. The Court denies the Motion to Dissolve as to
Orlando Medical. A Judgment shall be entered in the amounts requested. Counsel for
Plaintiff shall send a proposed final judgment in Word format.

COURT RECESSED at 8:53 AM on this the 5th day of December, 2024, subject to call.
Filed in Open Court on 12/05/2024
Deputy Clerk in Attendance: s/Lajuan R.

Office of Tiffany M. Russell, Orange County Clerk of the Circuit and County Courts

# EXHIBIT "C"

United States Bankruptcy Court
Middle District of Florida

**Notice of Bankruptcy Case Filing**

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 11 of the United States Bankruptcy Code,
entered on 12/05/2024 at 2:51 PM and filed on 12/05/2024.

**Orlando Medical Institute, Inc.**
6925 Lake Ellenor Drive
Building 3, Suite 300
Orlando, FL 32809
Tax ID / EIN: 42-1654639



The case was filed by the debtor's attorney:          The bankruptcy trustee is:

**Daniel A Velasquez**                                **Jerrett M McConnell**
Latham, Luna, Eden & Beaudine, LLP                    McConnell Law Group, P.A.
201 S. Orange Ave., Ste. 1400                         6100 Greenland Road, Unit 603
Orlando, FL 32801                                     Jacksonville, FL 32258
407-481-5800                                          904-570-9180

The case was assigned case number 6:24-bk-06628-TPG to Judge Tiffany P. Geyer.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain
circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a
debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page https://ecf.flmb.uscourts.gov
or at the Clerk's Office, George C. Young Federal Courthouse, 400 West Washington Street, Suite 5100, Orlando, FL 32801.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Jose A Rodriguez**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 01/20/2025 12:50:55 | | |
| PACER Login: | NRossoletti | Client Code: | |
| Description: | Notice of Filing | Search Criteria: | 6:24-bk-06628-TPG |
| Billable Pages: | 1 | Cost: | 0.10 |

# EXHIBIT "D"

## RETURN OF SERVICE

**State of Florida**                    **County of Orange**                    **Circuit Court**

Case Number: 2022-CA-007527-O

Plaintiff:
**HEAVEN 3 RE, LLC**

vs.

Defendant:
**FELIX MARQUEZ**

For:
E. GINNETTE CHILDS
AKERMAN LLP
420 SOUTH ORANGE AVENUE
SUITE  1200
ORLANDO, FL 32802

Received by CAPLAN AND CAPLAN PROCESS SERVICE on the 27th day of March, 2024 at 3:58 pm to be served on **WELLS FARGO BANK, N.A. C/O CORPORATION SERVICE COMPANY, REGISTERED AGENT, 1201 HAYS STREET, TALLAHASSEE, FL 32301**.

I, ERIC L. LARSON, do hereby affirm that on the **28th day of March, 2024** at **8:50 am, I:**

served a **CORPORATION** by delivering a true copy of the     **WRIT OF GARNISHMENT, NOTICE TO DEFENDANT OF RIGHT AGAINST GARNISHMENT OF WAGES, MONEY, AND OTHER PROPERTY, AND CLAIM OF EXEMPTION AND REQUEST FOR HEARING**    with the date and hour of service endorsed thereon by me, to:     **CORPORATION SERVICE COMPANY**    as **REGISTERED AGENT** at the address of:    **1201 HAYS STREET, TALLAHASSEE, FL 32301**   on behalf of    **WELLS FARGO BANK, N.A.**,    and informed said person of the contents therein, in compliance with F.S. 48.081(3)

**Additional Information pertaining to this Service:**
CIERRA YOUNG, CLERK FOR RA,AUTHORIZED TO ACCEPT SERVICE OF PROCESS,  BF 27 YRS 5'4 140 LBS BLACK HAIR NO GLASSES

Under penalty of perjury,  I declare that I have read the foregoing Verified return of Service and the facts stated in it are true, that I  that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I also certify that the above stated facts are correct to the best of my knowledge..  Pursuant to F.S. 92.525(2), Notary not required.

**ERIC L. LARSON**
CPS #063, 2ND JUDICIAL CIRCUIT

**CAPLAN AND CAPLAN PROCESS SERVICE**
**351 SW 136TH AVENUE**
**Ste 207**
**davie, FL 33325**
**(305) 374-3426**

Our Job Serial Number: CPN-2024012854
Ref: 12854

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2r

Filing # 194735749 E-Filed 03/25/2024 02:05:43 PM

| DELIVERED | 3/26/2024 8:50 AM |
| --- | --- |
| SERVER | ELL |
| LICENSE | CPS #063, 2ND JUDICIAL CIRCUIT |

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR ORANGE
COUNTY, FLORIDA

HEAVEN 3 RE, LLC,
as successor in interest to Heaven III, LLC,

      Plaintiff,                    CASE NO.: 2022-CA-007527-O

v.

FELIX MARQUEZ, an individual, and
ORLANDO MEDICAL INSTITUTE, INC., a
Florida corporation,

      Defendants,

and

WELLS FARGO BANK, N.A.,

      Garnishee.

_____/

### **WRIT OF GARNISHMENT**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to summon Garnishee, WELLS FARGO BANK, N.A., c/o

Corporation Service Company, Registered Agent, 1201 Hays Street, Tallahassee, FL 32301-

2525, to serve an Answer to this writ on E. Ginnette Childs, Esquire, and Riya Resheidat,

Esquire, Plaintiff's attorneys, whose address is Akerman LLP, 420 South Orange Avenue, Suite

1200, Orlando, Florida 32801, ginny.childs@akerman.com, riya.resheidat@akerman.com,

suzy.miller@akerman.com and melissa.tejada@akerman.com, within 20 days after service on the

Garnishee, exclusive of the day of service, and to file the original with the Clerk of the Court

either before service on the attorney or immediately thereafter, stating whether the Garnishee is

indebted to the Defendants, FELIX MARQUEZ and ORLANDO MEDICAL INSTITUTE, INC.,

at the time of the Answer or was indebted at the time of service of the writ, plus up to 1 business day for the Garnishee to act expeditiously on the writ, or at any time between such times, and in what sum and what tangible and intangible personal property of said Defendants the Garnishee has in its possession or control of at the time of the Answer or had at the time of service of this writ, or at any time between such times, and whether the Garnishee knows of any other person or entity indebted to said Defendants or who may be in possession or control of any of the property of the Defendants.  The amount named in Plaintiff's motion for this writ is $58,740.29, plus post-judgment interest at the prevailing Florida post-judgment statutory interest rate of 9.09% from March 8, 2024 through December 31, 2024. Thereafter, on January 1 of each succeeding year until the judgment is paid, the interest rate will adjust in accordance with Section 55.03, Florida Statutes.

**WITNESS** my hand and the seal of this Court on the 25th_ day of ___March_____, 2024.



Tiffany Moore Russell, Clerk of Courts
**Civil Division**
425 N Orange Ave
Room 350
Orlando, Florida 32801

CLERK OF THE COURT

BY:___/s/Rasheda Thomas_____
   As Deputy Clerk

**SHOULD YOU FAIL TO ANSWER THIS WRIT WITHIN THE TIME ALLOWED BY LAW, A JUDGMENT MAY BE ENTERED AGAINST YOU FOR THE FULL AMOUNT NAMED IN THIS WRIT.  YOU SHOULD CONSULT YOUR ATTORNEY FOR ADVICE ON FILING THE ANSWER.**

## RETURN OF SERVICE

**State of Florida**                     **County of Orange**                          **Circuit Court**

Case Number: 2022-CA-007527-O

Plaintiff:
**HEAVEN 3 RE, LLC, as successor in interest to
Heaven III, LLC**

vs.

Defendant:
**FELIX MARQUEZ and ORLANDO MEDICAL
INSTITUTE, INC. a Florida Corporation**

For:
E. GINNETTE CHILDS AKERMAN LLP
420 SOUTH ORANGE AVENUE SUITE  1200
ORLANDO, FL 32802

Received by CAPLAN AND CAPLAN PROCESS SERVICE on the 24th day of April, 2024 at 3:31 pm to be served on **WELLS FARGO BANK, N.A. C/O CORPORATION SERVICE COMPANY, REGISTERED AGENT, 1201 HAYS STREET, TALLAHASSEE, FL 32301**.

I, ERIC L. LARSON, do hereby affirm that on the **25th day of April, 2024** at **1:50 pm, I:**

served a **CORPORATION** by delivering a true copy of the     **(SECOND) WRIT OF GARNISHMENT, NOTICE TO DEFENDANT OF RIGHT AGAINST GARNISHMENT OF WAGES, MONEY AND OTHER PROPERTY AND CLAIM OF EXCEPTION AND REQUEST OF HEARING**    with the date and hour of service endorsed thereon by me, to:     **CORPORATION SERVICE COMPANY**    as **REGISTERED AGENT** at the address of:    **1201 HAYS STREET, TALLAHASSEE, FL 32301**   on behalf of **WELLS FARGO BANK, N.A.**,    and informed said person of the contents therein, in compliance with F.S.  48.081(3)

**Additional Information pertaining to this Service:**
CEASAR SCALIA, CLERK FOR RA, WM 30 YRS 5'9 165 LBS BLACK HAIR GLASSES

Under penalty of perjury,  I declare that I have read the forgoing Verified return of Service and the facts stated in it are true, that I  that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I also certify that the above stated facts are correct to the best of my knowledge..  Pursuant to F.S. 92.525(2), Notary not required.

**ERIC L. LARSON**
CPS #063, 2ND JUDICIAL CIRCUIT

**CAPLAN AND CAPLAN PROCESS SERVICE
351 SW 136TH AVENUE
Ste 207
davie, FL 33325
(305) 374-3426**

Our Job Serial Number: CPN-2024016623
Ref: 16623

Filing # 196884161 E-Filed 04/24/2024 12:23:23 PM

```
DELIVERED  4/29/2024 1:50 PM
SERVER     ELL
LICENSE    CPS #063, 2ND JUDICIAL
           CIRCUIT
```

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR ORANGE
COUNTY, FLORIDA

HEAVEN 3 RE, LLC,
as successor in interest to Heaven III, LLC,

      Plaintiff,

CASE NO.: 2022-CA-007527-O

v.

FELIX MARQUEZ, an individual, and
ORLANDO MEDICAL INSTITUTE, INC., a
Florida corporation,

      Defendants,

and

WELLS FARGO BANK, N.A.,

      Garnishee.

_____/

### (SECOND) WRIT OF GARNISHMENT

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to summon Garnishee, WELLS FARGO BANK, N.A., c/o

Corporation Service Company, Registered Agent, 1201 Hays Street, Tallahassee, FL 32301-

2525, to serve an Answer to this writ on E. Ginnette Childs, Esquire, and Riya Resheidat,

Esquire, Plaintiff's attorneys, whose address is Akerman LLP, 420 South Orange Avenue, Suite

1200, Orlando, Florida 32801, ginny.childs@akerman.com, riya.resheidat@akerman.com,

suzy.miller@akerman.com and melissa.tejada@akerman.com, within 20 days after service on the

Garnishee, exclusive of the day of service, and to file the original with the Clerk of the Court

either before service on the attorney or immediately thereafter, stating whether the Garnishee is

indebted to the Defendants, FELIX MARQUEZ and ORLANDO MEDICAL INSTITUTE, INC.,

76081436;1

at the time of the Answer or was indebted at the time of service of the writ, plus up to 1 business day for the Garnishee to act expeditiously on the writ, or at any time between such times, and in what sum and what tangible and intangible personal property of said Defendants the Garnishee has in its possession or control of at the time of the Answer or had at the time of service of this writ, or at any time between such times, and whether the Garnishee knows of any other person or entity indebted to said Defendants or who may be in possession or control of any of the property of the Defendants.  The amount named in Plaintiff's motion for this writ is $58,740.29, plus post-judgment interest at the prevailing Florida post-judgment statutory interest rate of 9.09% from March 8, 2024 through December 31, 2024. Thereafter, on January 1 of each succeeding year until the judgment is paid, the interest rate will adjust in accordance with Section 55.03, Florida Statutes.

**WITNESS** my hand and the seal of this Court on the __24__ day of ___APRIL___, 2024.

04/24/2024

Tiffany Moore Russell, Clerk of Courts

/s/ Joji Jacob
Deputy Clerk
**Civil Division**
425 N Orange Ave
Room 350
Orlando, FL 32801

**SHOULD YOU FAIL TO ANSWER THIS WRIT WITHIN THE TIME ALLOWED BY LAW, A JUDGMENT MAY BE ENTERED AGAINST YOU FOR THE FULL AMOUNT NAMED IN THIS WRIT.  YOU SHOULD CONSULT YOUR ATTORNEY FOR ADVICE ON FILING THE ANSWER.**

76081436;1

# EXHIBIT "E"

Label Matrix for local noticing
113A-6
Case 6:24-bk-06628-TPG
Middle District of Florida
Orlando
Mon Jan 20 12:53:54 EST 2025

Heaven 3 RE, LLC
c/o Bilu Law, P.A.
2760 W. Atlantic Boulevard
Pompano Beach, FL 33069-5711

Orlando Medical Institute, Inc.
6925 Lake Ellenor Drive
Building 3, Suite 300
Orlando, FL 32809-4690

Bank of America
Business Card
PO Box 15796
Wilmington, DE 19886-5796

EMMA IV, Inc
Attn: James Estepp
1600 Lake Ellenor Drive, Ste 199
Orlando, FL 32809

EMMA IV, Inc & HEAVEN 3RE, LLC
c/o Stuart Glenn, Esq
1728 Salem Drive
Orlando, FL 32807-8325

Emma IV, Inc
10905 Savona Way
Orlando, FL 32827-7272

Felix Marquez
6925 Lake Ellenor Drive
Bld 3, Suite 300
Orlando, FL 32809-4631

Felix Marquez, Jr.
6737 Lake Carlisle Blvd.
Orlando, FL 32829-7642

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

HEAVEN 3 RE, LLC
c/o Nicholas G. Rossoletti, Esquire
Bilu Law, P.A.
2760 W. Atlantic Boulevard
Pompano Beach, FL 33069-5711

Heaven 3 RE, LLC
1900 North Bayshore Drive
Apt. 3212
Miami, FL 33132-3016

Heaven 3 RE, LLC
c/o Bilu Law, P.A.
2760 W. Altantic Boulevard
Pompano Beach, Florida 33069-5711

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o Robertson, Anschutz, Schneid,
Crane & Partners, PLLC
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487-2853

Leslie Mark Schneider
Schneider Law Firm PA
One FInancial Plaza
100 SE Third Ave, 10th Floor
Fort Lauderdale, FL 33394-0002

Orange County Tax Collector
PO Box 545100
Orlando FL 32854-5100

Small Business Administration
P.O. Box 3918
Portland, OR 97208-3918

State of Florida, DOR
Orlando Service Center
400 W. Robinson Street
Suite #N302
Orlando, FL 32801-1759

U.S. Small Business Administrati
2 North Street
Suite 320
Birmingham, AL 35203

Uline
12575 Uline Drive
Pleasant Prairie, WI 53158-3686

United States Trustee - ORL
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Daniel A Velasquez
Latham, Luna, Eden & Beaudine, LLP
201 S. Orange Ave., Ste. 1400
Orlando, FL 32801-3483

Jerrett M McConnell
McConnell Law Group, P.A.
6100 Greenland Road, Unit 603
Jacksonville, FL 32258-7436

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

End of Label Matrix
Mailable recipients    23
Bypassed recipients     1
Total                  24